## THE ASHLEY WIRE COMPANY

*v.*

## FRANK MERCIER.

*Filed at Ottawa November 9, 1896.*

1. TRIAL—*when direction of verdict for defendant is properly refused.* Direction of a verdict for defendant in an action for personal injuries is properly refused where there is evidence tending to show negligence.

2. EVIDENCE—*that workman objected to machinery as dangerous is admissible.* Evidence that a workman objected to working under a crane because he was afraid of it, in connection with other parts of a conversation with the superintendent, which, under the circumstances, tended to show that the attention of the company was called to the fact that the crane was unsafe, is admissible in an action by an employee for injuries from the fall of such crane.

3. SAME—*when exclusion of evidence is not prejudicial.* The exclusion of certain questions asked an expert is not prejudicial error where the testimony called for, so far as proper, is embraced in other testimony given by him.

4. APPEALS AND ERRORS—*refusal of proposition given in another in-struction is not error.*  The refusal of instructions is not cause for reversal where the court gave an instruction in place of them, covering the rule invoked, and in some respects more favorable to the party asking them:

5. SAME—*one who is benefited by error cannot complain.*  A party can not complain of an error beneficial rather than injurious to him.

*Ashley Wire Co.* v. *Mercier,* 61 Ill. App. 485, affirmed.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Will county; the Hon. CHARLES BLANCHARD, Judge, presiding.

This is a writ of error brought by the Ashley Wire Company to reverse a judgment of the Appellate Court affirming a judgment of the circuit court of Will county for $7000, recovered by defendant in error, Frank Mercier, against said company for a personal injury.

The following statement of the facts is taken from the opinion of the Appellate Court, and is sustained by the record:

The Ashley Wire Company "was engaged in the manufacture of fence wire and nails at Joliet, Illinois.  The material used was steel rods, which had to be annealed before they could be drawn to the required size.  In the factory there was an annealing room, in which there were some sixteen or eighteen pots, as they were called.  They were long iron tubes, about three feet in diameter and twelve or fourteen feet long, and extended down from the floor, loosely set in brick work.  There was a furnace under them to heat them and their contents.  The wire to be annealed was wound in coils around an iron stem or spindle with an eye in one end, and the coils were taken to the pots and let down into them and taken out by means of a crane.  The crane had a mast about twenty feet high, supporting a boom near its top at right angles with it, extending thirty feet from it.  The coils were carried to and from the pots by swinging the boom

with a rope, and there was an apparatus which traveled on the boom so as to operate at different distances from the mast, also moved by hand power. The coils were lowered and hoisted by power communicated from the machinery. The operators would hook into the eye of a stem and swing the coil to a pot, and put two in a pot, one above the other. When the pots were filled they were covered and heated to a cherry red, and after being allowed to cool, the coils were drawn out and distributed through the mill. The wire, when heated and soft, would frequently settle down and expand, so as to stick to the sides of the pot, and the coils and pot would be lifted together. When this happened, one of the men would run an iron bar down the side of the pot and loosen the wire from it so that it could be withdrawn. At the time plaintiff was injured, he and a fellow-servant were operating the swinging motion of the boom by means of the rope. A boy was near the mast to apply the hoisting power, and a fourth employee connected the hook from the hoisting pulleys with the stems and notified the boy when to apply the power. The coils on one stem stuck and would not come out, but the wire and pot were lifted together a short distance. The power was shut off and the pot went back to its place. The employee who was connecting the apparatus and controlling the power took a bar and attempted to loosen the wire, as usual. He called for the power again, and it was applied and the crane fell. The boom struck plaintiff and injured him and killed his assistant. The crane fell because a guy-rod opposite the pot, running from near the top of the mast to a brick wall, gave way and was pulled through the wall. The charge against defendant under which it was claimed that it was liable was a want of proper care in the support and fastenings of that guy-rod. There were four guy-rods to hold the top of the mast in place, and they ran to the walls at different places. The one that gave way ran to a brick partition wall about sixteen

feet high and twelve inches thick.    The rod ran through the wall at an angle of about forty-five degrees, at a point where the wall had an additional thickness of four inches on each side, called 'pilasters,' making it twenty or twenty-one inches thick, and the rod came out on the farther side, in the angle of the main wall and pilaster. In that angle there was a cast iron plate thirty inches long, extending down from the top of the wall, with one flange four inches wide resting against the pilaster, and the other flange, eight inches wide, against the main wall.    The rod ran through the plate at about the middle and was fastened with a nut.    The plate cracked in the center in sound iron and let the rod go through the wall.    *    *    *    There was evidence that long before this accident the wall in question had bulged where the rod went through, so as to destroy the even bearing on which the cast iron plate should have rested; that the bulging was visible, and that timbers had been put up to strengthen it."

D. J. SCHUYLER, and D. F. HIGGINS, for plaintiff in error:

The defendant was not an insurer of the machinery in use in the mill or the appliances for operating the same. Its agents and servants were only bound to ordinary care. *Richardson* v. *Cooper*, 88 Ill. 273; *Railway Co.* v. *Troesch*, 68 id. 551; *Railway Co.* v. *Scheuring*, 4 Ill. App. 540; *Noyes* v. *Smith*, 38 Vt. 59; Wood on Master and Servant, sec. 326, p. 678, *et seq.*

The defendant was not liable for an unusual accident. *Wolff Manf. Co.* v. *Wilson*, 152 Ill. 9; *Libby* v. *Scherman*, 146 id. 520; *Railway Co.* v. *Holman*, 155 id. 23; *Pentzar* v. *Iron Co.* 99 N. Y. 368.

There is no evidence even tending to show that the defects testified to in any way contributed to the breaking of the guy-rod or to the accident in question, or that plaintiff's fears tended to throw any light on the situa-

tion. *Camp Point Manf. Co.* v. *Ballou*, 71 Ill. 419; *McGanna-han* v. *Railway Co.* 72 id. 557; *Railway Co.* v. *Jones*, 76 id. 311; *Railway Co.* v. *Scheuring*, 4 Ill. App. 541; *Railway Co.* v. *Foss*, 88 Ill. 551.

HALEY & O'DONNELL, and MORRILL SPRAGUE, for defendant in error:

It is the duty of the master to exercise reasonable care in providing machinery and reasonable diligence in the supervision and inspection of the same. Failure in these respects renders the master liable for an injury to the servant. This duty cannot be delegated by the master so as to relieve himself from liability. *Pullman Palace Car Co.* v. *Laack*, 143 Ill. 242; *Railroad Co.* v. *Kneirim*, 152 id. 458.

A servant not informed of any existing defects has a right to rely upon the performance of this duty by the master. The servant is not obliged to investigate or test the fitness or safety of such machinery. *Railroad Co.* v. *Kneirim*, 152 Ill. 458; *Railroad Co.* v. *Hines*, 132 id. 168.

Who are fellow-servants is a question of fact for the jury. *Pullman Palace Car Co.* v. *Laack*, 143 Ill. 242; *Railroad Co.* v. *Fitzgerald*, 40 Ill. App. 476.

If the instructions, taken as a whole, state the law fairly the case will not be reversed, though some of the instructions may be imperfect or some are refused which with propriety might have been given. *Keeler* v. *Herr*, 157 Ill. 57; *Railroad Co.* v. *Kneirim*, 152 id. 458.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiff in error contends that the trial court erred in refusing its motion to instruct the jury that the evidence was not sufficient to support a verdict for the plaintiff, and to find their verdict for the defendant. It is clear, from the evidence, that such an instruction would have been erroneous. The record contains sufficient evidence tending to prove the negligence of plaintiff in error, the Ashley Wire Company, as alleged in the

declaration, to support the verdict. It is unnecessary to repeat the rule on that question here. Reference may be had, among others, to the following cases: *Simmons v. Chicago and Tomah Railroad Co.* 110 Ill. 340; *Chicago and Alton Railroad Co.* v. *Heinrich*, 157 id. 388; *New York, Chicago and St. Louis Railroad Co.* v. *Luebeck*, id. 595; *West Chicago Street Railway Co.* v. *Lyons*, id. 593; *Pullman Palace Car Co.* v. *Laack*, 143 id. 242.

It is assigned for error that the trial court permitted the witness Hilley to testify to two conversations between him and the superintendent of the company, had shortly before the accident. The superintendent had requested Hilley, then an employee, to take the place, under the crane or derrick, of a workman who was absent on account of sickness. Hilley demurred, saying he was afraid to work under that crane. The superintendent then said, "Try and draw them (the pots) to-day," and witness replied, "All right," and that he would do so. On the second occasion, which was only an hour or two before the accident occurred, witness and the superintendent were standing under the crane or derrick when the superintendent again requested him to go to work drawing the pots under the crane, and witness replied to the request that he was afraid of the derrick. The superintendent then told him to take his coat and go home—that he had no more use for him, witness. It is claimed by plaintiff in error that this testimony was erroneous and prejudicial to the defendant below, and principally for the reason that the witness did not, in this conversation, specify or point out to the superintendent any special defect in the crane or derrick which rendered it unsafe to those working under it, and that the mere fears of Hilley were wholly immaterial, but were injurious to the defense. It is very true that the mere fact that the witness was afraid to work under the crane would be improper as evidence to the jury; but that was only a part of the conversation with the superintend-

ent, which, taken all together, under the circumstances tended, we think, to show, to some extent, that the attention of the company was called to the fact that this part of the machinery was not in a safe condition, and as well said by the Appellate Court, it was "such as would cause a prudent man to inspect it, or to make some inquiry of the employee for the cause of the danger." The duty of those using machinery dangerous to human life to observe at all times due care and caution to see that it is in a reasonably safe condition, ought to be strictly enforced by the courts. It is not an unreasonable inference to be drawn from the testimony, that if the superintendent had made further inquiry and an examination of the derrick and its fastenings the serious accident which followed might have been averted. We are disposed to hold that no error was committed in the admission of this testimony.

It is also insisted that the trial court erred in refusing to permit the witness Bates to answer certain questions as an expert mechanic; but we think the testimony called for, so far as it was proper at all, was embraced in other testimony given by him, and that plaintiff in error was not injured by the ruling of the trial court.

It is not contended by counsel that the jury were improperly instructed at the request of plaintiff below, but it is insisted that error was committed in refusing certain instructions offered by the defendant. In the first place, it is claimed that there was error in refusing two certain instructions offered by defendant below, which instructions, after stating the rule applicable to fellow-servants, would have told the jury, in substance, that if they believed, from the evidence, that the accident was caused by the negligence of the fellow-servant of plaintiff he could not recover. It is a sufficient answer to say that the court formulated and gave to the jury an instruction in lieu of those asked by the defendant, covering the

rule invoked, and which, in some respects, was more favorable to the defendant than those asked by it.

Counsel say that this instruction of the court "omitted entirely the element held in all the authorities to be essentially necessary, namely, that the plaintiff must have been so associated with Murphy and Maloney as to exercise constant care and caution in the performance of their respective duties," and we are referred to the language used by this court in *Chicago and Northwestern Railroad Co.* v. *Moranda*, 93 Ill. 302, where it was said (p. 316): "Where servants of the same master are  *  *  *   by their usual duties brought into habitual consociation, it may well be supposed that they have the power of influencing each other to the exercise of constant caution in the master's work, by their example, advice and encouragement and by reporting delinquencies to the master, in as great, and in most cases in a greater, degree than the master." Whether the instruction was erroneous in the respect mentioned or not it is wholly unnecessary to consider, for the reason that the error, if any, was favorable to defendant below rather than to the plaintiff. The instruction as given, based upon the evidence, practically told the jury that the workmen engaged in the work at the crane were fellow-servants of Mercier, and that if the injury occurred because of the negligence of any of them, Mercier could not recover. Plaintiff in error cannot complain of an error beneficial rather than injurious to it.

In refusing other instructions asked we find no substantial error. Some were embraced in others given and others were defective, and it is sufficient here to say that the jury were instructed as favorably for the defendant below as the law warranted.

Finding no substantial error in the proceedings in the courts below the judgment of the Appellate Court must be affirmed.         *Judgment affirmed.*