## Bates Machine Company v. Thomas Crowley.

### Gen. No. 4,839.

1. MASTER—*duty to furnish appliances.* It is the duty of the master to furnish to his servant reasonably safe and sound tools and appliances with which to do his work, and the servant has a right to assume that this duty has been performed, and, in the absence of actual knowledge to the contrary, to act upon this assumption.

2. ASSUMED RISK—*how far doctrine of, restricted.* The doctrine of assumed risk does not apply to a danger arising from unsafe surroundings or instrumentalities unless the employee has or may be presumed to have knowledge or notice thereof.

3. PHYSICIAN'S OPINION—*when, incompetent.* An opinion of a physician based in whole or in part on the self-serving statement of a party, made with a view of enabling such physician to become a witness on his behalf in a suit where recovery is sought for the injuries, is not admissible in evidence:

4. FOREMAN—*when conversation had with, competent.* A conversation between an employee and the master's foreman is competent where its effect is to show notice to the foreman of the conditions which subsequently caused the injury.

Action on the case for personal injuries. Appeal from the Circuit Court of Will County; the Hon. CHARLES B. GARNSEY, Judge, presiding. Heard in this court at the April term, 1904. Reversed and remanded. Opinion filed August 24, 1904.

J. L. O'DONNELL, for appellant.

E. MEERS, for appellee.

MR. JUSTICE VICKERS delivered the opinion of the court.

This is an action by Thomas Crowley against the Bates Machine Co., for a personal injury received by him in the foundry of the appellant on the 12th day of January, 1901. Appellee Crowley recovered a verdict for $4,750 on which judgment was rendered and the Bates Machine Co. appeals.

Appellee was employed at the time of the accident as a moulder's helper in the foundry of appellant, and his duty was to work with the moulders, assist in preparing the moulds, to aid in moving flask plates and perform generally any labor connected with the moulding. For the purpose of moving heavy weights from one place to another on the floor of the foundry appellant had a number of frames to which slings, made of ropes, were attached, and the weight to be moved was placed in the sling, which consisted of a pair of loops of rope, and the crane was then worked by hand to lift the weight and swing it to the desired place. On the day of the accident a sling had been attached to a weight to be moved, which weighed a ton or more; the crane had suspended the weight five or six feet above the floor, when Edward Stecker, Sr., who was the foreman of the foundry, called on appellee, who was then some sixty feet away, to go and assist in pushing the sus-

pended weight to its place, which he did in connection with another helper by the name of Kuckuck. While appellee and Kuckuck had their hands on the weight pushing it so as to swing it to the place desired, the rope broke, causing the weight to fall against a flask plate which was there in the building, forcing it against appellee and injuring him.

The negligence charged is that the appellant negligently and wrongfully failed to provide reasonably safe appliances with which appellee was to perform his work, but on the contrary furnished an unsafe and defective rope or sling by means of which the same broke, causing the injury complained of; also in negligently failing to furnish appellee a reasonably safe place to work, and in negligently ordering appellee to work in a place of danger, which was known to be dangerous by appellant and unknown to appellee. The rope used for this sling had originally been an inch and a quarter in diameter, but after the accident the rope was examined and found to have been worn or broken so that half of it was a new break and half old break as the witnesses described it. It was fuzzy and half worn at the point where it broke which was about two feet above the splice. There is no claim that this rope was a reasonably safe one for lifting these heavy weights, and there is no denial of the testimony that the rope was half worn and frayed at the point where it broke.

It was the duty of the appellant to furnish appellee with reasonably safe and sound tools and appliances with which to do his work, and appellee had a right to assume that this duty had been performed and in the absence of actual knowledge to the contrary, to act upon this assumption. Wharton on Negligence, 211; U. S. Rolling Stock Co. v. Wilder, 116 Ill. 100; Chicago & Eastern Illinois R. R. Co. v. Hines, 132 Ill. 161; Pullman Palace Car Co. v. Laack, 143 Ill. 242; Monmouth Mining & Manf. Co. v. Erling, 148 Ill. 521; Chicago Drop Forge & Foundry Co. v. VanDam, 149 Ill. 337; Mobile & Ohio R. R. Co. v. Godfrey, 155 Ill. 78; Chicago & Alton R. R. Co. v. Maroney, 170 Ill. 520. The doctrine of assumed risk does not apply to a danger

arising from unsafe surroundings or instrumentalities, unless the employee has or may be presumed to have knowledge or notice thereof. Whitney & Starrette Co. v. O'Rourke, 172 Ill. 177.

On the trial before the jury Dr. Clyne was examined for the appellee and was permitted over the objection of appellant to give his opinion as to the general condition of appellee's health based upon his examination made October 6, 1902. Previous to answering the question the witness said his answer would be based partly upon objective and partly upon subjective symptoms. The witness then said : " I would not think him a physically sound man." It is contended that this evidence falls within the class that is excluded under the rule laid down in West Chicago St. R. R. Co. v. Carr, 170 Ill. 478, where it is said : " We think, however, the correct rule to be deduced from that laid down by Greenleaf, and most conducive to justice, is, that such declarations, being in favor of the party making them, are only competent when made as part of the *res gestœ,* or to a physician during treatment, or upon an examination prior to and without reference to the bringing of an action to recover damages for the injury complained of, unless the examination should be made at the instance of the defendant, with a view to the trial." It is a part of the appellee's contention that he was injured in his lungs and back and that in consequence of the injury he had expectorated blood for more than a year after the accident, and that his weight had decreased from 174 pounds to 145 to 156 pounds since his injury. Dr. Clyne was not asked to state what Crowley said to him about his condition, but the doctor said his answer would be based in part on the subjective symptoms, from which it is reasonable to infer that he had in mind certain conditions the existence of which depended on the statement of the appellee. An opinion of a physician based in whole or in part on the self-serving statement of a party, made with a view of enabling the physician to become a witness on his behalf in a suit where recovery is sought for the injuries, is not admissible in evidence. If a

physician should hold an object before the eyes of a party or a watch to his ear and ask him whether he saw the object or heard the watch and was told he could not, he would not thereby be qualified to give an opinion that the sight or hearing was impaired. No difference is perceivable between opinions obtained in such a manner and the direct statement of the party, for in such case the value of the opinion rests upon the veracity of the party being examined. In Chicago & Eastern Ill. R. R. Co. v. Donworth, 203 Ill. 192, in passing on questions similar to the one here involved the court says: "The opinion expressed by the physician that the appellee had lost the power of hearing in his left ear was, it is clear, based upon the declaration of appellee to the physician, and it was error to overrule the appellant company's motion to strike such opinion from the evidence. The effect of these rulings of the court was to authorize the jury to regard as proven that the appellee had lost the sense of hearing in his left ear and to award appellee damages accordingly. Thus appellee was allowed to enhance his damages by proof of his own self-serving and incompetent assertions. To what extent the damages were so enhanced it was not possible for the Appellate Court to ascertain. There is nothing in the testimony by which the amount allowed by the jury as damages for the injury to appellee's loss of hearing can be segregated from the damages allowed the appellee because of the injury to his right knee, his right thigh, right arm, right side of the head and his back. In such state of the case the error in the admission of the evidence cannot be cured by the entry of a *remittitur*. Chicago, Milwaukee and St. Paul Railroad Co. v. Hall, 90 Ill. 42; Hartford Deposit Co. v. Calkins, 186 Ill. 104; 3 Cyc. 438, 439."

A witness by the name of Carberry testified that on the day before the accident he had a conversation with Mr. Stecker, the foreman of appellant, in which the witness refused to use the rope slings in question because he said to Mr. Stecker "they are no good." This is objected to as improper and incompetent. We fail to see any objection to

the evidence; it tended to call the foreman's attention to the condition of the ropes which were claimed to be defective and not fit for the use being made of them. The court properly overruled the objection to this evidence, but for the error in permitting Dr. Clyne to give his opinion to the jury based in part on the statement of appellee, the judgment is reversed and the cause remanded.

*Reversed and remanded.*