## LEONARD MARTIN CONST. CO. v. HIGHBARGER.

(Circuit Court of Appeals, Sixth Circuit. November 2, 1909.)

No. 1,944.

1. TRIAL (§ 420*)—OVERRULING OF MOTION FOR DIRECTED VERDICT—WAIVER OF EXCEPTIONS.

An exception to the overruling of a motion for a directed verdict at the close of plaintiff's evidence is waived by defendant by the introduction of evidence in his own behalf.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 983; Dec. Dig. § 420.*]

2. MASTER AND SERVANT (§ 270*)—ACTION FOR INJURY TO SERVANT—EVIDENCE.

In an action by an employé against a foreign corporation to recover for personal injury caused by the caving in of the side of a trench made in filled material, testimony was competent to show a conversation between defendant's superintendent, in charge of the entire work, and a foreman under him, prior to the accident, in which the superintendent's attention was called to the unsafe condition of the trench and the need of bracing the walls, as showing notice to defendant, and tending to show its negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 923; Dec. Dig. § 270.*]

3. MASTER AND SERVANT (§ 288*)—MASTER'S LIABILITY FOR INJURY TO SERVANT —ASSUMPTION OF RISK.

Plaintiff was employed as a carpenter by defendant, engaged as contractor in building a roundhouse, and while working in a trench, called a "drop pit," the side wall caved in, causing his injury. The trench was not in natural ground, but in filled material, and the walls were unprotected. Plaintiff had nothing to do with making it, and no experience as to such trenches. There was evidence tending to show a difference of opinion between defendant's superintendent and one of the foremen as to the need of bracing the walls. *Held*, that plaintiff had the right to assume that defendant had performed its duty by exercising ordinary care to make the place where he was required to work reasonably safe, and, in the absence of evidence that he had actual knowledge, was not chargea-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ble as matter of law with assumption of the risk, due to the character of the material in which the trench was dug.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068 · 1088; Dec. Dig. § 288.*

Assumption of risks incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

In Error to the Circuit Court of the United States for the Eastern Division of the Southern District of Ohio.

Action by Aaron K. Highbarger against the Leonard Martin Construction Company. Judgment for plaintiff, and defendant brings error. Affirmed.

This was a suit at law for personal injuries suffered by plaintiff below from the falling of a portion of the side of a trench, in which he was doing certain carpenter work during the construction of a roundhouse in Newark, Ohio. The suit was brought in the common pleas court of Licking county, Ohio, and was subsequently removed to the Circuit Court of the United States for the Southern District of Ohio, Eastern Division, on petition of the Leonard Martin Construction Company, a corporation of the state of Illinois. The case was tried in the Circuit Court, with a jury, upon pleadings in the ordinary form, and a verdict in the sum of $10,000 was rendered in favor of plaintiff below. On motion for new trial, the verdict was reduced to $7,000, and a remittitur was entered accordingly. The case is pending here on proceedings in error.

Daugherty & Todd, for plaintiff in error.

Jones & Jones, for defendant in error.

Before LURTON, SEVERENS, and WARRINGTON, Circuit Judges.

WARRINGTON, Circuit Judge (after stating the facts as above). The charge of the court to the jury is not included in the record; nor is any special instruction that may have been requested by either side and given or refused. The only assignments of error that need be noticed relate to the evidence. One arises upon an exception to the admission of testimony as to a certain conversation said to have occurred between the superintendent and one of the foremen of plaintiff in error; and the other two are based upon the court's refusals to direct a verdict, in the first place at the close of the testimony .of plaintiff in error, and in the next place at the close of all the evidence offered at the trial.

At the time of the accident plaintiff in error was engaged as the. principal contractor for the removal of an old roundhouse and the construction of a new one for the Baltimore & Ohio Railroad Company. The trench mentioned in the statement comprised what was called a drop pit and a jack pit. The drop pit was 7½ feet wide, 5 feet deep, with perpendicular sides, and 75 feet long. The jack pit was placed along the central portion of the drop pit, and was 3 feet wide and 5½ feet in depth below the bottom of the drop pit. A cement wall, of 8 inches in thickness and 3½ feet in height, had been placed on each side of the jack pit, when defendant in error, Highbarger, a carpenter, was directed by his foreman to enter the trench and engage in the construction of a wooden frame for temporarily

holding and forming other cement work. While leaning forward in doing his work, with his feet upon one of these walls in the jack pit, a portion of the north side of the drop pit behind him gave way and caused his injury. No bracing had been placed in the drop pit to support the sides. Highbarger had done similar work in the jack pit at different times within a few days of his injury, which occurred November 30, 1906. The excavation had been made about six weeks before.

Highbarger had no part in the excavation of either of the trenches described, but was engaged and worked solely as a carpenter. He was in the employ of the construction company. The company's general superintendent of the entire work was a man named Park, who was constantly on the work and in control; and a foreman of the company's carpenters was in immediate charge of Highbarger and certain other carpenters working with him. It was alleged in the petition and answer, and proved at the trial, that the excavation was made in filled material, not in natural ground. This fact, coupled with the claim of each party that the other understood the character of the materials composing the fill, was made the basis of the charge by each that the other was in fault.

The company waived its exception to the denial of the motion to direct a verdict in its favor at the close of plaintiff's testimony; for, instead of standing on its exception, it introduced testimony in its own behalf. Detroit Crude Oil Co. v. Grable, 94 Fed. 73, 75, 36 C. C. A. 94; Union Pac. Ry. Co. v. Daniels, 152 U. S. 684, 687, 14 Sup. Ct. 756, 38 L. Ed. 597; Spalding v. Castro, 153 U. S. 38, 43, 14 Sup. Ct. 768, 38 L. Ed. 626; Runkle v. Burnham, 153 U. S. 216, 222, 14 Sup. Ct. 837, 38 L. Ed. 694; Sigafus v. Porter, 179 U. S. 116, 121, 21 Sup. Ct. 34, 45 L. Ed. 113; Traction Co. v. Durack, 78 Ohio St. 243, 85 N. E. 38.

During the progress of the trial exception was taken by the construction company to the admission of testimony of one Oliver Lawhead (foreman of certain of the company's carpenters, but not including Highbarger and those working with him under another foreman) to the effect that, two or three weeks prior to the accident, Lawhead told Superintendent Park that the bank of the trench looked to him "like it was dangerous and should be propped up"; to which Park answered, "Oh h——l, it will not fall in." This testimony, subject to like exception of the construction company, was corroborated by one Smart, a fellow workman of Highbarger. It is true, as claimed by counsel, that the bank mentioned in the conversation was not in specific terms located by either Lawhead or Smart, and Park testified that the conversation did not take place; but it is reasonably certain, from all the questions and answers upon the subject, that the bank in question was the one that counsel and the witnesses had in mind.

The testimony was competent. The conversation took place, if at all, between two representatives of the construction company, one a foreman of carpenters, and the other the superintendent, and it amounted at least to notice. The construction company is an Illinois corporation, and, so far as appears in the record, Superintendent Park

was its principal and controlling representative in Ohio. This fact is mentioned only to accentuate the plenary character of the agency. If any one on behalf of the corporation was authorized to receive or acknowledge notice of the dangerous condition of the bank and of the necessity for bracing, or was authorized to control the mode of conducting the work, or to commit the company for failure to provide the employés with a place of reasonable safety in which to perform their work, it was this superintendent, not to speak of Lawhead, the foreman.

In Bartolomeo v. McKnight, 178 Mass. 242, 247, 59 N. E. 804, 805, an action for personal injuries caused by the caving in of the side of a trench, the court passed upon the competency of a conversation similar to the one in question. It said:

"The fact that the foreman's attention was called to the danger of the trench and the need of bracing seem to us to have been clearly competent on the question of negligence on his part."

To the same effect, respecting another kindred conversation, is the decision in Brady v. Norcross, 174 Mass. 442, 54 N. E. 874.

In Parker v. Boston & Hingham Steamboat Co., 109 Mass. 449, 451, when passing upon the question of negligence touching the condition of a gangway plank used by passengers in boarding the boat, the court said:

"Testimony that the attention of the agents or servants of the defendants was called to the insecure condition of the plank was competent to show such negligence."

See, also, New York Electric Equipment Co. v. Blair, 79 Fed. 896, 897, 25 C. C. A. 216; Harder & Hafer Coal Min. Co. v. Schmidt, 104 Fed. 282, 285, 43 C. C. A. 532; Hoyt v. Jeffers, 30 Mich. 181, 189.

It remains to consider the exception to the refusal to direct a verdict at the close of all the evidence. The point of the complaint is that Highbarger possessed such knowledge of the fill and of the materials composing it as to enable him to observe and appreciate the danger and so to charge him with the risk of entering upon the work he was doing when he met with his injury. The comparison thus suggested between the duty of an employer and that of an employé to determine the liability of filled material to fall when exposed to excavation, is important. Highbarger, as before stated, took no part in making the excavation, and had no experience in that respect. He did not hear the Lawhead-Park conversation, and he testified in substance, that he did not know of the tendency of such material to fall under conditions like those in question.

Can it be true that all fills, or all fills like this one, are so obviously calculated to slide into excavations made in them, as to suggest danger to men of Highbarger's class and experience? Was the court, as matter of law, upon admission that the excavation had been made in a fill of the character shown, warranted in charging Highbarger with understanding and appreciating the tendency or danger of the sides of excavations made in such material as this to break and fall? If the conversation between Lawhead and Park actually occurred, it is plain

that at least two of the construction company's controlling agents were not in agreement upon these questions.

But a more satisfactory solution may be found, we think, in the settled rule that it is the primary duty of employers to provide reasonably safe places for the performance of the duties imposed on their employés. As before pointed out, the instructions given to the jury are not included in the record. This fact and the verdict justify the inference of negligence in the construction company respecting this primary duty. Furthermore, it must be presumed that the court in fact instructed, and rightly instructed, the jury concerning the assumption of risk involved in Highbarger's employment.

Now, when it is urged that Highbarger, in obeying the instructions of his foreman to enter the trench for the purpose of doing carpenter work, appreciated the danger and assumed the risk, and so, as matter of law, relieved his employer from the performance of its own primary duty, the claim ought to be supported by convincing authority. We think the claim is inconsistent with the principles announced in many decisions.

In Norman v. Wabash R. Co., 62 Fed. 727, 728, 10 C. C. A. 617, 618, this court was required to pass upon the law "governing the reciprocal duties of employer and employé with reference to the safe condition of the place where the employé is to work." A motion to direct a verdict for defendant was made and granted in the court below, and the judgment was reversed for that reason. Judge Taft, speaking for the court, said:

"It is the duty of the employer to exercise ordinary care to provide and maintain a reasonably safe place in which the employé is to perform his services, so that the employé shall not be exposed to unnecessary and unreasonable risks. The employé has the right to presume, when directed to work in a particular place, that reasonable care has been exercised by his employer to see that the place is free from danger, and, in reliance upon such presumption, may discharge his duties in such place, unless there are obvious dangers which would lead a reasonably prudent employé either to refuse to work in the place, or to make complaint of the same to his master. If, however, the danger is not actually known to the employé, or would not become known to an employé of reasonable prudence performing the duties imposed on him, he cannot be charged with contributory negligence in the happening of an injury to him by reason of the condition of the place in which he works."

In the course of the opinion, approval was given to the decision in Railway Co. v. Jarvi, 53 Fed. 65, 69, 3 C. C. A. 433, 437, and a portion of the quotation from that case, respecting the duties of master and servant, there set out, is as follows:

"Each is required to exercise that degree of care in the performance of his duty which a reasonably prudent person would use under like circumstances: but the circumstances in which the master is placed are generally so widely different from those surrounding the servant, and the primary duty of using care to furnish a reasonably safe place for others is so much higher than the duty of the servant to use reasonable care to protect himself in a case where the primary duty of providing a safe place * * * rests on the master, that a reasonably prudent person would ordinarily use a higher degree of care to keep the place of work reasonably safe, if placed in the position of the master who furnished it than if placed in that of the servant who occupies it."

See Narramore v. Railway Co., 96 Fed. 298,[1] and especially the language employed by Judge Taft (page 304) in pointing out the distinction between assumption of risk and contributory negligence.

In National Steel Co. v. Hore, 155 Fed. 62, 65, 83 C. C. A. 578, 581, this court had occasion to pass upon the question of assumption of risk by a plumber's helper in relation to the water block of a furnace, which required repairs, and consequent removal and replacing. The point arose both upon the overruling of a demurrer to the petition and the refusal of a peremptory instruction. In speaking of the respective duties of the employer, plaintiff in error, and of the employé, defendant in error, Judge Lurton said:

"It was the duty of plaintiff in error to guard against such accidents as could be foreseen as liable to occur by the exercise of reasonable care, and the defendant in error had a right to assume that the master had not unreasonably and negligently subjected him to danger that this block would blow out. To assume as matter of law that a common laborer, such as Hore was, should have known that there was this danger from the facts known to him, is going too far. To determine the effect of the conditions known to him in producing hazard, not ordinarily incident to his service in aiding in the disconnection of the water pipes supplying the block to be removed, would require a skill and judgment which ought not to be attributed as matter of law to one who is described in the petition as a plumber's helper and whose experience about such work does not appear. * * * There is a distinction between knowledge of defects, or knowledge of alleged negligent acts, and knowledge of the risks resulting from such defects or acts."

In Harder & Hafer Coal Min. Co. v. Schmidt (before cited) 104 Fed. 282, 285, 43 C. C. A. 532, 535, where it appeared that appreciation of danger on the part of one employé was communicated to a mining boss, who assured him that his fears were unfounded, and another employé without knowledge of the danger was injured, it was held:

"Whatever may be the exemption of the employer from liability for injuries caused by a danger that is obvious to the injured, such exemption will not be accorded where the nature of the menace is so uncertain as to cause discussion between the employés and the employer, with the result that the employer dissuades the employé of his apprehension, and especially so where the particular employé injured is without any knowledge of its existence."

See, also, James B. Clow & Sons v. Boltz, 92 Fed. 572, 574, 34 C. C. A. 550; Choctaw, O. & G. R. Co. v. McDade, 112 Fed. 888, 892, 50 C. C. A. 591, affirmed in 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96; Valley R. Co. v. Keegan, 87 Fed. 849, 31 C. C. A. 255; Mason & O. R. Co. v. Yockey, 103 Fed. 265, 268, 43 C. C. A. 228; Bartolomeo v. McKnight, 178 Mass. 242, 246, 59 N. E. 804, before cited; Kranz v. L. I. R. Co., 123 N. Y. 1, 5, 25 N. E. 206, 20 Am. St. Rep. 716; Wellston Coal Co. v. Smith, 65 Ohio St. 70, 61 N. E. 143, 55 L. R. A. 99, 87 Am. St. Rep. 547; Davis v. Turner, 69 Ohio St. 101, 68 N. E. 819. But it is not necessary to cite further decisions.

The class of decisions relied on so confidently by learned counsel for the company deny liability of the master, either where dangerous conditions and the perils ordinarily attending them are in truth known and appreciated alike by employer and employé, or where such conditions are manifestly as readily observable by the one as the other. But

[1] 37 C. C. A. 499, 48 L. R. A. 68.

we are not satisfied that the facts upon which those decisions are based are analogous to the facts appearing in the present record.

As regards the claim that the decision of this court in Morgan Const. Co. v. Frank, 158 Fed. 964, 86 C. C. A. 168, is controlling here, it is enough to say that the court ·found that the place became dangerous only through the prosecution of the work carried on by the fellow servants of intestate, and that the master had not knowledge of the conditions for a sufficient length of time to enable him either to cause the iron plates which occasioned the injury to be removed, or the mode of piling them to be changed. Plainly these facts differ materially from those shown in the present case.

The judgment must be affirmed, and it is so ordered.

