# Eldridge, Appellant, *v.* Fell Manufacturing Company.

*Negligence—Master and servant—Safe place to work—Cutting machine—Complaint to superintendent—Evidence—Case for jury.*

1. An employer is required not only to furnish his employee reasonably safe tools and appliances, but to see that they are kept in such condition by proper and timely inspection.

2. Where a spring in an automatic paper cutting machine, is shown to have been in use for more than four years without inspection, that such length of use was improper, that the spring was in fact defective, and that such defect was known to the superintendent of the shop where the machine was installed, a workman

who is injured by reason of the defect, is entitled to have his case submitted to a jury.

3. Where in an action by an employee against his employer to recover damages for personal injuries sustained while operating a defective machine, the plaintiff shows affirmatively that the machine was defective, he is entitled to show that complaint had been made to the defendant's superintendent prior to the accident, of the defective condition of the machine, and also to show a conversation between the superintendent and another employee relating to the defect in the machine.

Argued Jan. 22, 1913. Appeal, No. 312, Jan. T., 1912, by plaintiffs, from judgment of C. P. No. 4, Philadelphia Co., June T., 1909, No. 2556, refusing to take off nonsuit in case of Albert C. Eldridge and William C. Eldridge v. Fell Manufacturing Company. Before FELL, C. J., MESTREZAT, POTTER, STEWART and MOSCHZISKER, JJ. Reversed.

Trespass to recover damages for personal injuries. Before WILLSON, P. J.

Plaintiff had his right hand injured on September 25, 1907, by the fall of a knife on a machine at which he was working in defendant company's factory.

When plaintiffs' witness, Herman H. Nast, was on the stand, he was asked:

Q. I notice in that statement you say something about a man named Katz operating this machine in addition to Eldridge, was there any complaint made to you, or did you hear of the machine having repeated with Katz while you were in the employ of the Fell Manufacturing Company as superintendent, prior to the happening of this accident?

Objected to. Objection sustained. Exception noted for plaintiff by direction of the court.

Q. Did Katz, who operated this machine, complain to you while you were employed by the Fell Manufacturing Company as superintendent, before the happening of

this accident to Eldridge, that the machine had repeated on him?

Objected to. Objection sustained. Exception noted for plaintiff by direction of the court. (3)

When plaintiffs' witness, Joseph Koeschick, was on the stand he was asked:

Q. Had you heard a complaint made to Mr. Nast, while he was superintendent for the E. C. Fell Manufacturing Company, before the happening of this accident, that the machine had repeated?

Objected to. Objection sustained. Exception noted for plaintiff by direction of the court. (4)

The court directed a nonsuit which it subsequently, on motion, refused to take off.

*Errors assigned* were (1) refusal to remove nonsuit; (3, 4) rulings on evidence as above.

*John R. K. Scott* and *William T. Connor,* for appellants.—The case was for the jury: Baker v. Allegheny Valley Ry. Co., 95 Pa. 211; Rapho v. Moore, 68 Pa. 404; Bier v. Standard Mfg. Co., 130 Pa. 446; McGuigan v. Beatty, 186 Pa. 329; Honifius v. Chambersburg Engineering Co., 196 Pa. 47; Dyer v. Bridge Co., 198 Pa. 182; Newton v. Vulcan Iron Co., 199 Pa. 646; Sharpley v. Wright, 205 Pa. 253.

*Maurice W. Sloan,* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, April 21, 1913:

We think the court erred in excluding the testimony which is the subject of the third and fourth assignments of error and, therefore, those assignments must be sustained. The evidence was not offered to prove that the spring was defective but to bring home notice to the defendant company of the defect in the machine. It was incumbent on the plaintiff to show not only that the spring was defective and caused the injuries of which

he complained, but also that the defendant company had notice of the defect or that by the exercise of reasonable care and prudence the company could have discovered it. It was for the purpose of showing such notice that the excluded testimony was offered. Nast was a vice-principal and his knowledge was the knowledge of the company. The testimony offered tended to show not only that the machine was defective but that the defect was in the spring, the part of the machine which the plaintiff alleges was defective and caused his injuries. If we understand the offers they were for the purpose of showing by the vice-principal himself that prior to the accident complaint was made to him that the knife had "repeated" or fallen on former occasions; and by another witness that he had heard the same complaint made to the vice-principal. The plaintiff, Albert C. Eldridge, a boy of nineteen years of age, was, at the time of the accident, operating an automatic paper cutting machine. The knife, when elevated above the table, was held in place by a spring. By the agency of a lever on the right hand side of the machine the knife was brought down and cut the paper. It then went back automatically to its elevated position and was held there by the spring until the operator again brought it down by the use of the lever. Whether it remained suspended or not depended upon the spring. If the spring was in good condition and strong enough to perform its duty, the knife remained suspended. If, for any reason, the spring became weak or was out of order in any way and failed to perform its function, the knife would drop and endanger the person operating the machine. The plaintiff claims that his injuries were caused by the defendant allowing the machine to be in a dangerous, insecure, and unsafe condition "in that the catch or device holding the knife was allowed to be out of order."

From the evidence it appeared that the spring of which the plaintiff complains had been in use at least four years. Nast was in the service of the company for

about four years prior to the accident. He was the plaintiff's superior and had charge of the work. It was his duty to see that the machine was kept in proper repair. He testified that there had been no inspection of the machine or of the spring during the time he was in the employ of the company, that on one occasion the knife had "repeated" or fallen twice, that the day after the accident he examined the spring and found it in a weak condition, that it was the condition of the spring that caused the accident, and that the knife would not "repeat" or fall so long as the spring was strong enough to hold the mechanism in place. He further testified that when the machine was in good condition or good repair the knife would not drop down the second time or "repeat." After this evidence had been introduced, the plaintiff made the offers to show that complaint was made to the defendant's superintendent that the spring was weak and the knife had been "repeating." The evidence was certainly competent for the purpose for which it was offered. The information brought to the superintendent put him on notice of the condition of the spring and it was his duty, representing the company, to make an inspection of the machine. The employer is required not only to furnish his employee reasonably safe tools and appliances but to see that they are kept in such condition by proper and timely inspection. The plaintiff's contention is that the fact that the spring had been in use for four years without any inspection was of itself evidence of negligent conduct on the part of the employer sufficient to go to the jury. If the excluded evidence had been admitted and was believed by the jury it would have shown notice to the defendant through its superintendent of the very defect which subsequently caused the plaintiff to lose his hand. The superintendent had no right to ignore the information brought to him by the employees of the company. It is true, it might have turned out to be incorrect, but under the circumstances we do not think the

superintendent had a right to assume that it was not correct in view of the fact that the safety of the person operating the machine was involved. Such testimony has been received for a like purpose in other jurisdictions: Kansas Pacific Railway Company v. Little, 19 Kan. 267; Ashley Wire Company v. Mercier, 163 Ill. 486; Brady v. Norcross, 174 Mass. 442; Bartolomeo v. McKnight, 178 Mass. 242; and Bates Machine Company v. Crowley, 115 Ill. App. 540. In the Mercier case, CARTER, J., delivering the opinion says that the conversation with the superintendent tended "to show, to some extent, that the attention of the company was called to the fact that this part of the machinery was not in a safe condition, and as well said by the appellate court, it was 'such as would cause a prudent man to inspect it, or to make some inquiry of the employee for the cause of the danger.'" In the Brady case Judge HAMMOND says: "The conversation between Douglass and Smith (superintendent) tended to show that each had notice of the condition of the stage, and it was admissible to show such notice." In the Bartolomeo case, MORTON, J., delivering the opinion says: "The remaining exception relates to evidence of what was said to the defendant's foreman and in his presence of the dangerous character of the trench and the need of bracing. We think that it was rightly admitted......The fact that the foreman's attention was called to the danger of the trench and the need of bracing seems to us to have been clearly competent on the question of negligence on his part." In the Crowley case it was held that a conversation between an employee and the master's foreman is competent where its effect is to show notice to the foreman of the conditions which subsequently caused the injury.

If the court below had admitted the testimony showing notice to the superintendent of the defective condition of the machine, we think there would have been sufficient evidence in the case to send it to the jury. It is true, as the learned trial judge says in his opinion, that the

spring referred to was in full view of the plaintiff, and that he had an opportunity to see whether the spring did its work or not. But that is not a sufficient excuse for the defendant's failure to keep the spring in safe working condition by proper inspection. This spring had been in use at least four years without any examination or inspection on the part of the defendant. On at least two occasions the knife had fallen or "repeated" which, according to the superintendent's testimony, clearly disclosed that it was not in proper condition. His testimony showed that such springs were not kept in use for so long a time. As said in Baker v. Railroad Company, 95 Pa. 211, the employer is bound to know that such mechanism will last only a limited time, and that it will not do for him to furnish it in a sound condition, and then fold his arms until by actually breaking it is demonstrated to be insecure. The plaintiff could assume that his employer would take the necessary precaution to keep every part of the machine in a reasonably safe condition, and he had the right to act upon that assumption. It is true that, at the time of the accident, the plaintiff had been employed for possibly two years and had worked on this machine but that did not relieve the employer of his duty, if it was a duty, to make the proper inspection for ascertaining the condition of the spring or any other part of the machine. In Rapho v. Moore, 68 Pa. 404, after stating that it is negligence to omit all proper precautions to ascertain the true condition of the tool or appliance, it is said: "Nor will mere appearance in such a case excuse the neglect. It is a matter of common knowledge that invisible defects may, and under such circumstances probably do exist." In the case at bar the plaintiff did not and could not see the defect in the spring, and hence the necessity on the part of the employer to ascertain its condition by proper and timely inspection. It was a question for the jury to determine, had the rejected evidence been admitted, whether the defendant company had under the circum-

stances exercised proper precaution in keeping the ma-. chine in a reasonably safe condition. The admission of expert testimony is largely in the discretion of the court and under Nast's preliminary examination we are not clear that the court was in error in refusing to permit him to testify as to the length of time a spring would ordinarily remain strong and in good condition. Whether he may make himself competent on the next trial we need not anticipate or discuss.

The first, third, and fourth assignments of error are sustained, and the judgment is reversed with a procedendo.