CHOCTAW, O. & G. R. CO. v. McDADE et al.

(Circuit Court of Appeals, Sixth Circuit. January 7, 1902.)

No. 982.

**1. MASTER AND SERVANT—SAFE PLACE TO WORK—RAILROAD BRAKEMAN—WATER SPOUT.**

Plaintiff's intestate, an experienced brakeman, was on a furniture car, which is longer and wider than an ordinary freight car. To signal the engineer, it was necessary to swing his lantern over the side of the car. After so signaling in discharge of his duty, his body was found 675 feet west of the water tank, on the right side of the track, near which the signal was given. There was evidence tending to show that the water spout from the water tank was unnecessarily so constructed as to project close to the track, endangering the lives of employés on the roofs of passing cars. Besides injuries likely to have resulted from a fall from a moving train, deceased was shown to have received a violent blow on the left side of the head from some blunt instrument. *Held*, that a verdict based on the assumption that the water spout was the proximate cause of the fall of deceased was supported by the facts and circumstances.

**2. SAME—EVIDENCE—INSTRUCTION.**

Where the evidence in an action for the death of a railroad brakeman showed that neither necessity nor convenience required the maintenance of a water spout in dangerous proximity to passing cars, and that there was no such custom or usage on well-managed railroads as would justify such an unnecessarily dangerous projection, there was no error in an instruction stating that it is negligence, of itself, for a railroad to so construct such appliances as the one claimed to have been the cause of the brakeman's death, that they will injure brakemen at work on its trains.

**3. SAME—ABSTRACT PRINCIPLES.**

Where the evidence in an action against a railroad company for the death of a brakeman justified an instruction that it was negligence, of itself, for a railroad to so construct such appliances as the one claimed to have caused the brakeman's death, that they would injure brakemen at work on its trains, there was no error in refusing instructions which dealt with the safety of appliances and places for work in the abstract.

**4. SAME—ASSUMPTION OF RISK—CONTRIBUTORY NEGLIGENCE—QUESTIONS FOR JURY.**

Where an experienced railroad brakeman, who had been in defendant's employ but a short time, was struck by a water spout so constructed as to project unnecessarily close to passing cars, the questions of assumption of risk and contributory negligence were for the jury.[1]

**5. SAME—RECONSTRUCTION OF APPLIANCE—EVIDENCE—ADMISSIBILITY.**

In a suit against a railroad company for the death of a brakeman, the evidence tended to show that he was struck by a water spout projecting close to the top of passing cars. Defendant gave measurements of the appliance to show that it did not, at the time of the accident, constitute a peril to men on passing cars in the proper discharge of their duty, and to show that the structure conformed to similar structures on other roads. *Held*, that evidence to show what changes had occurred

---

[1] Assumption of risk incident to employment, see notes to Railroad Co. v. Hennessey, 38 C. C. A. 314.

in the appliances by reconstruction since the night of the accident, and their effect on subsequent measurements, was admissible, under instructions restricting such evidence to showing the condition of the water spout at the time of the accident.

In Error to the Circuit Court of the United States for the Western District of Tennessee.

This is an action by the widow and children of John I. McDade to recover damages for his negligent death while in the service of the plaintiff in error. There was a judgment for the plaintiffs, and the defendant has sued out this writ of error. The deceased was killed at or near Goodwin station, Ark., between 12 and 1 o'clock on the night of August 18, 1900. He was at the time in the discharge of his duty as head brakeman on top of a furniture car some 8 or 10 cars back of the engine, in a train consisting of 27 freight cars. The crew of the train consisted of the engineer, fireman, two brakemen, and the conductor. The train was west-bound. On approaching Goodwin, the engineer, when from a quarter to one-half mile east, blew for the station. The conductor, who was in the cupola of the caboose, gave with his lantern the signal to pass Goodwin without stopping. This signal was passed by the rear brakeman, then on a car about three cars ahead of the caboose, to the head brakeman, McDade, and by the latter was repeated to the engineer, who answered with a short blast. The train, in consequence, did not check, but passed Goodwin at a speed of probably 20 miles an hour. When the train reached Brinkley, 9 miles west, McDade was missed. His lantern was found on top of the car where he had last been seen, still burning, and seated in a place provided for it near the grab irons on the north side and west end of the top of the car, and within reach of the place from which the "go-ahead signal" had been repeated by the deceased. McDade's body was subsequently found on the ground, on the north side of the track, 675 feet west of the water tank at Goodwin. The evidence tended to show that it was the duty of brakemen to be on top of trains as they were approaching and passing stations, and that it was the duty of the head brakeman to watch for signals from the rear brakeman, and to repeat them to the engineer. There was evidence tending to show that, when McDade repeated the go-ahead signal on approaching Goodwin, he was seated on the top and right hand side of a furniture car, somewhat higher than the average freight car, and that he signaled the engineer over the right-hand side of the top of the train, by the proper movement of his lantern. His distance back from the engine and the engineer's position in the cab made it necessary that the signal should be repeated over the side of the car, just as this was. The evidence also tended to show that McDade, in being where he was when he repeated this signal, was just where his duty required him to be, both for observing and giving signals. There was at Goodwin, on the north side of the track, a water tank, with usual swinging spout for lowering and connecting with the tank of the engine. The contention of the defendants in error was that McDade was hit by this spout when passing the tank at Goodwin, and that he was rendered unconscious or dazed, and fell off the train at or near the point where his body was found, 675 feet west of this tank spout. In support of this conclusion there was evidence tending to show that this spout did not hang vertically, in reference to the tank, when not in use, but that it was constructed so close to the track, and swung at such an angle toward the track, as to endanger the lives of employés upon the top of passing cars. There was also evidence tending to show that there was no reason of necessity or convenience for so constructing or maintaining this spout, and that customarily they were so swung or suspended as to clear all trains, and all persons whose duty required them to be on the roofs of passing cars. There was also evidence tending to show that the deceased had received a violent blow from some blunt object on the left side of his head and face, and that this would be the side exposed to a collision with this spout if he remained in the position he was in when he was observed to give the go-ahead signal, just before passing this spout. There was also evidence of injuries to other

parts of his head and body, likely to have resulted from a fall from the top of a train rapidly moving. There was evidence tending to show that the car from which McDade fell was a furniture car, and that it was both higher and wider than the average freight car. There was also evidence that such cars were frequently received into the trains of the plaintiff in error and of other companies. McDade was an experienced brakeman, though he had been in the service of the plaintiff in error but a short time, and had not been over the division including Goodwin more than 8 or 10 times, equally divided between day and night trips.

.E. E. Wright, for plaintiff in error.

G. T. Fitzhugh, for defendants in error.

Before LURTON, Circuit Judge, and WANTY, District Judge.

LURTON, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

1. The whole case of the plaintiff below was founded upon the theory that the deceased had been killed by coming into collision with an overhanging water spout at the Goodwin tank. The case was put to the jury by the trial judge alone upon this theory, for the jury were told that "if he was not struck by the water spout, or the chain depending from it, in such a way as to cause his fall from the car, your verdict should be for the defendant company." While it cannot be said the evidence demonstrates that the deceased was caused to fall from his post by reason of a collision with the water spout at Goodwin, yet the facts and circumstances pointing to that conclusion were quite sufficient to justify a verdict based upon such an assumption. We have reached this conclusion from an attentive examination of the evidence, and are content to state this result without burdening this opinion with the details, or an argument based on facts of interest only to the particular litigants here concerned. So far as the motion for an instruction to find for the plaintiff in error was based upon the supposed insufficiency of the evidence in respect to the operativeness of the water spout as a proximate factor in causing the death of the deceased, it was rightly denied.

2. In respect to the question of the negligence of the railroad company, the court instructed the jury, in regard to the maintenance of a water spout in such a situation as to be liable to strike brakemen in the discharge of their duty, that "it is negligence, of itself, for a railroad to so construct such appliances as that we have before us that they will injure the brakemen at work upon its trains." This was excepted to, and has been assigned as error. Many requests for charges involving the duty of the employer to the employé in respect to safety of appliances and places for work were also refused, not because they were not law in the abstract, but because. inconsistent with the instruction in respect to the particular case which had been already given. If, upon all the facts and circumstances in evidence, the jury could not reasonably have come to any other conclusion but that it was negligent to maintain a water spout in such proximity to the track as to endanger employés whose duty required them to be on top of passing trains, the court was justified in the peremptory instruction given; and it was

not error to either give the instruction we have set out, or to refuse those which dealt with the question in the abstract. Railroading is an occupation essentially dangerous, and the general principle is that railroad employés undertake all the risks of the employment which are usually incident to the occupation. But such employés do not assume the risk of the negligence of the company itself. Among the duties which devolve upon the company is that of exercising ordinary care in furnishing its employés with proper roadbed, track, and other structures and appliances upon which and with which the service required may be rendered. In the discharge of this general duty the master must not expose his servants, when in the performance of their duty, to perils or hazards against which they may be guarded by the exercise of ordinary care and diligence upon the part of the master. These principles are so well settled as to only need statement. Railroad Co. v. O'Brien, 161 U. S. 451, 16 Sup. Ct. 618, 40 L. Ed. 766; Hough v. Railroad Co., 100 U. S. 213, 25 L. Ed. 612; Reed v. Stockmeyer, 20 C. C. A. 383, 74 Fed. 186; Clow & Sons v. Boltz, 34 C. C. A. 550, 92 Fed. 572; Felton v. Bullard, 37 C. C. A. 1, 94 Fed. 781; Railroad Co. v. Yockey, 43 C. C. A. 228, 103 Fed. 265.

In Reed v. Stockmeyer, cited above, the Seventh circuit court of appeals, speaking by Circuit Judge Jenkins, said:

"So, also, it is the duty of the master to provide a reasonably safe place in which the servant may perform his work, and to keep it in such suitable condition. This duty is not absolute, but relative. It is measured by the nature and character of the employment, the location of the premises, and their surroundings. There are employments that of themselves are necessarily dangerous, in connection with which no position can be made secure. In such case the law requires of the master that he shall use ordinary care that the dangers of the employment are not unnecessarily enlarged; that he shall take proper care to furnish such safeguards as are customarily employed in the performance of like hazardous service, so that the servant, exercising proper care, may render his service without exposure to dangers that are not within the obvious scope of the employment as usually carried on."

The conclusive evidence was that such swinging spouts should be so constructed as to clear cars without endangering employés in the discharge of their duties on the roofs of passing trains. To do this it was, perhaps, not always necessary or customary that the spouts should, when not pulled down, hang in a position absolutely vertical to the tank. But on all of the evidence it was made to appear most conclusively that they should not be placed in such close proximity to the track, or hang, when not in use, at such an angle, as to endanger employés in the proper discharge of their duties on the top of passing trains. It may be that the evidence was conflicting as to whether this particular spout was a peril to brakemen on top of cars of the usual height. But it was in evidence that cars built to carry furniture are somewhat higher above the track and somewhat wider than ordinary freight cars, and that such cars were well known in the traffic, and frequently found in the trains on this railroad. The evidence clearly established that neither necessity nor convenience required that such spouts should be so constructed as to constitute a dangerous obstruction

to employés on any cars known to the traffic. Judge Hammond, who tried the case in the circuit court, upon this subject summed up the law very tersely, by saying to the jury, in justification of his instruction, that:

"It is so simple a task, one so devoid of all exigencies of expense, necessity, or convenience, so free of any consideration of skill, except that of the foot rule, and so entirely destitute of any element of choice or selection, that not to make such a construction safe for the brakeman on the trains is a conviction of negligence."

It was the duty of the company to use ordinary care to see that the dangers incident to the employment were not unnecessarily enlarged, and the servant thereby exposed to perils which could have been guarded against by the exercise of that degree of care due to employés. The unusual and unnecessary projection of buildings, posts, cattle guards, etc., over a track, or so near as to endanger employés in the discharge of their duties, has been generally regarded as negligence. Dorsey v. Construction Co., 42 Wis. 583; Colf v. Railroad Co., 87 Wis. 273, 58 N. W. 408; Railroad Co. v. Somers, 78 Tex. 439, 14 S. W. 779; Railroad Co. v. Davis, 92 Ala. 300, 9 South. 252, 25 Am. St. Rep. 47; Scanlon v. Railroad Co., 147 Mass. 484, 18 N. E. 209, 9 Am. St. Rep. 733; Railroad Co. v. Russell, 91 Ill. 298, 33 Am. Rep. 54; Shear. & R. Neg. (5th Ed.) § 201. If it had appeared that there was a uniform custom on well-managed railroads to construct such swinging water spouts in such proximity to passing cars as to endanger employés standing or sitting on the roofs of such cars while in the discharge of their duty, no legal imputation of negligence would, perhaps, arise from such a construction, however unnecessary such dangerous proximity might be. But we are not called upon to decide such a question, for the conclusive evidence in this case was that neither necessity nor convenience required the maintenance of such spouts in dangerous proximity to passing cars, and that there was no such custom or usage on well-managed railroads as would justify an unnecessarily dangerous projection of the kind in question. There was on the evidence in this case no error in instructing the jury that, if the deceased was struck by the tank spout at Goodwin while on the roof of a passing car, the fact would convict the company of negligence.

3. So far as the motion to instruct the jury to find for the defendant was based upon the assumption of the risk incident to this spout by the deceased, or upon the evidence tending to show contributory negligence, the motion was properly denied. McDade was entitled to rely upon the company's having properly constructed this spout, and the danger from the proximity of this particular spout was by no means so obvious, especially in view of McDade's short experience on this part of the road, as to charge him with having assumed the risk. The questions of assumption of risk and of contributory negligence were properly left to the jury, under a charge quite as favorable as the plaintiff in error could demand. Railway Co. v. Keegan, 31 C. C. A. 255, 87 Fed. 849; Railroad Co. v. O'Brien, 161 U. S. 451, 16 Sup. Ct. 618, 40 L. Ed. 766.

4. There was evidence admitted showing a reconstruction of this Goodwin water spout after the accident. The plaintiff in error gave evidence of certain measurements of the appliance in question made after the accident, for the purpose of showing that it did not, at the time of the accident, constitute a peril to men on passing cars in the proper discharge of their duty, and also for the purpose of showing that in its construction it conformed to similar structures on the other roads. For the purpose of showing that the structure was not in the same condition on the night of the accident as when these measurements were made, the plaintiffs were permitted to show just what changes had occurred, and their effect on subsequent measurements. The evidence was at the time restricted to the single purpose of arriving at the condition of the structure at the time of the accident. The jury at the time were warned to give this evidence of reconstruction no other effect. In the charge the court recurred to this evidence, and said:

"I shall not comment on the proof, because it is not necessary. But as a precautionary warning it is best to repeat what was said by the court so often during the progress of the trial,—that you must not imply anything against the defendant company by reason of the fact that after this accident they made a reconstruction of these water-tank appliances. The court kept that fact out of the proof as long as possible. But in trying to decide the conflict of testimony about the measurements by feet and inches, it became necessary to take notice of this change in order to understand the value of the proof as to measurements. The fact of the change has no other bearing on the issue of this case than that, and, for the reason so often explained to you, you should give the fact no other force than that which is necessary for the explanation of the distances."

We think there was no error.

Many errors have been assigned upon the admission of evidence. None of them are well taken. There was no error in the charge given or charges refused.

Judgment affirmed.