## CHOCTAW, OKLAHOMA AND GULF R. R. CO. *v.* McDADE.

### ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 26. Submitted October 14, 1903.—Decided November 2, 1903.

It is the duty of a railroad company to use due care to provide a reasonably safe place and safe appliances for the use of workmen in its employ. It is obliged to use the same degree of care to provide properly constructed roadbed, structures and track to be used in the operation of the road.

The servant has a right to assume that the master has used due diligence in providing suitable appliances for the operation of his business and does not assume the risk of the employer's negligence in making such provision.

While an employé who continues without objection in his master's employ with knowledge of a defective apparatus assumes the hazard incident to the situation, unless the evidence plainly shows the assumption of the risk, it is a question properly left to the jury.

THE facts appear in the opinion of the court.

*Mr. J. W. McLoud* for plaintiff in error.

*Mr. G. T. Fitzhugh* for defendant in error.

MR. JUSTICE DAY delivered the opinion of the court.

This was an action to recover for the death, by wrongful act, of John I. McDade, an employé of the Choctaw, Oklahoma and Gulf Railroad Company. The plaintiff recovered a judgment in the Circuit Court, which was affirmed in the Court of Appeals. 112 Fed. Rep. 888.

There was evidence tending to show that McDade, a brakeman in the employ of the company, was killed on the night of August 19, 1900, while engaged in the discharge of his duties as head brakeman on a car in one of the company's trains. McDade was at his post of duty and when last seen was transmitting a signal from the conductor to the engineer to run past the station of Goodwin, Arkansas, which the train was then approaching. The train passed Goodwin at a rate of from twenty to twenty-five miles an hour. At Goodwin there was a water tank, having attached thereto an iron spout, which, when not in use, hung at an angle from the side of the tank. Shortly after passing Goodwin, McDade was missed from the train, and upon search being instituted, his lantern was found near the place on the car where he was at the time of giving the signal. His body was found at a distance of about six hundred and seventy-five feet beyond the Goodwin tank. There was also testimony tending to show, from the location of the waterspout and the injuries upon the head and person of McDade, that he was killed as a result of being struck by the overhanging spout. The car upon which McDade was engaged at the time of the injury was a furniture car, wider and higher than the average car, and of such size as to make it highly dangerous to be on top of it at the place it was necessary to be when giving signals, in view of the fact that the spout cleared the car by less than the height of a man above the car when in position to perform the duties required of him.

There was no eyewitness as to the exact manner of the injury to McDade, and it is urged that the court below should have taken the case from the jury because of the lack of testi-

VOL. CXCI—5

mony upon this point. It was left to the jury under proper
instructions to find whether McDade came to his death in
the manner stated in the declaration, and the court distinctly
charged that, unless satisfied of this, there could be no verdict
against the railroad company. While the evidence was cir-
cumstantial, it was ample, in our opinion, to warrant the sub-
mission of this question to the jury under the instructions given.
Furniture cars, like the one on which McDade was riding, were
received and transported over this road. There is testimony
tending to show that a proper construction of the tank and
appliances required the spout to hang vertically when not in
use, and other testimony to the effect that when hung in this
manner it would be difficult, if not impossible, for the fireman
to pull down the spout in taking water, and that to hang it at
an angle is, at least, a more convenient method of adjustment.
Be this as it may, the testimony makes it clear that in the
proper construction of this appliance there is no necessity of
bringing it so near to the car as to endanger brakemen work-
ing thereon. Whether hung at an angle or not, it can be so
constructed as to leave such space between it and the top of
the car as to make it entirely safe for brakemen in passing.
The testimony makes it equally clear that when on the furni-
ture car, McDade, sitting at his post, would be likely to be
struck by the spout in passing. It is undoubtedly true that
many duties required of employés in the transaction of the
business to be carried on by a railroad company are neces-
sarily attended with danger, and can only be prosecuted by
means which are hazardous and dangerous to those who see
fit to enter into such employment. Where no necessity exists,
as in the present case, for the use of dangerous appliances, and
where it is a matter requiring only due skill and care to make
the appliances safe, there is no reason why an employé should
be subjected to dangers wholly unnecessary to the proper
operation of the business of the employer. *Kelleher, Admr.,*
v. *Milwaukee & Northern R. R. Co.,* 80 Wisconsin, 584; *Georgia
& Pacific Railway Co.* v. *Davis,* 92 Alabama, 300; 1 Shearman

& Redfield on Negligence, 5th edition, section 201, and cases cited.

We agree with the Circuit Court of Appeals in affirming the instructions upon this subject given by Judge Hammond to the jury, in which he said: "It is so simple a task, one so devoid of all exigencies of expense, necessity or convenience, so free of any consideration of skill, except that of the foot rule, and so entirely destitute of any element of choice or selection, that not to make such a construction safe for the brakeman on the trains is a conviction of negligence."

It is the duty of a railroad company to use due care to provide a reasonably safe place and safe appliances for the use of workmen in its employ. It is obliged to use ordinary care to provide properly constructed roadbed, structures and track to be used in the operation of the road. *Union Pacific Ry. Co.* v. *O'Brien,* 161 U. S. 451. The spout might readily have been so constructed and hung as to be safe. As it was maintained it was a constant menace to the lives and limbs of employés whose duties required them, by night and day, to pass the structure. It is a case where the dangerous structure is not justified by the necessity of the situation, and we agree with the judgments in the courts below that its maintenance under the circumstances was negligence upon the part of the railroad company. The court, having left to the jury to find the fact as to whether McDade was killed by the obstruction, did not err in giving instruction that the negligent manner in which the waterspout was maintained was, of itself, a conviction of negligence.

The court left to the jury the question of the assumption of risk upon the part of McDade with instructions which did not permit of recovery if he either knew of the danger of collision with the waterspout, or, by the observance of ordinary care upon his part, ought to have known of it. The servant assumes the risk of dangers incident to the business of the master, but not of the latter's negligence. *Hough* v. *Railway Co.,* 100 U. S. 213; *Wabash Ry. Co.* v. *McDaniels,* 107 U. S. 454;

*N. P. R. R. Co.* v. *Herbert,* 116 U. S. 642; *N. P. R. R. Co.* v. *Babcock,* 154 U. S. 190. The question of assumption of risk is quite apart from that of contributory negligence. The servant has the right to assume that the master has used due diligence to provide suitable appliances in the operation of his business, and he does not assume the risk of the employer's negligence in performing such duties. The employé is not obliged to pass judgment upon the employer's methods of transacting his business, but may assume that reasonable care will be used in furnishing the appliances necessary for its operation. This rule is subject to the exception that where a defect is known to the employé, or is so patent as to be readily observed by him, he cannot continue to use the defective apparatus in the face of knowledge and without objection, without assuming the hazard incident to such a situation. In other words, if he knows of a defect, or it is so plainly observable that he may be presumed to know of it, and continues in the master's employ without objection, he is taken to have made his election to continue in the employ of the master, notwithstanding the defect, and in such case cannot recover. The charge of the court upon the assumption of risk was more favorable to the plaintiff in error than the law required, as it exonerated the railroad company from fault if, in the exercise of ordinary care, McDade might have discovered the danger. Upon this question the true test is not in the exercise of care to discover dangers, but whether the defect is known or plainly observable by the employé. *Texas & Pacific Ry. Co.* v. *Archibald,* 170 U. S. 665.

There was testimony tending to show that McDade had been over the part of the road where the Goodwin tank was situated only a few times, and that part of the trips were made in the night season, and also that the furniture cars were of unusual height as compared with those generally used in the transaction of the business of the company. Neither the assumption of risk nor the contributory negligence of the plaintiff below was so plainly evident as to require the jury to be instructed

to find against the plaintiff, but, under the facts disclosed, these matters were properly left to the determination of the jury.

Numerous exceptions were taken to the refusal of the court to charge in certain respects, but as the charge given was proper and pertinent to the facts and sufficiently comprehensive, it was not error to refuse such requests. The assignments of error as to the admission of testimony were nearly all based upon exceptions general in their character, and under the well-settled rule not reviewable here. *Burton* v. *Driggs,* 20 Wall. 125; *Noonan* v. *Caledonia Mining Co.,* 121 U. S. 393, 398; *District of Columbia* v. *Woodbury,* 136 U. S. 450, 462.

The one of most gravity is as to the admission of testimony to show that after the accident the waterspout at Goodwin was reconstructed so as to be placed at a point farther removed from passing trains. Evidence having been introduced by the railroad company to show by measurements that the waterspout did not constitute danger to brakemen on passing trains, the court permitted plaintiff below to show that changes had been made which might have an effect upon the subsequent measurements offered in evidence. The jury were told that nothing could be inferred against the defendant company by reason of the fact that after the accident such reconstruction of the spout was made, and that such change had no other bearing upon the issues of the case than to enable the jury to ascertain the value of the measurements offered in evidence.

We find no error in the judgment of the Circuit Court of Appeals, and it is

*Affirmed.*