CASES DETERMINED

IN THE

# SUPREME COURT OF NEBRASKA

## JANUARY TERM, 1917.

MAUDE M. HENDERSON, ADMINISTRATRIX, APPELLEE, v.
UNION PACIFIC RAILROAD COMPANY, APPELLANT.

FILED JANUARY 3, 1917. No. 19047.

1. **Master and Servant**: INJURY TO SERVANT: DEFECTIVE APPLIANCES: ASSUMPTION OF RISKS. A workman has the right to assume that his employer has used due diligence to provide suitable appliances in the operation of its business. Ordinarily, he does not assume the risk of the employer's negligence in performing such duties. If, however, the defect is known to the employee or is so patent and obvious as to be readily observed by him, and he continues to use the defective appliance with full knowledge and without objection, he assumes the risk of injury incident to such a situation.

2. ————: ————: QUESTION FOR JURY. At the time the platform to certain stock-yards at a station on defendant's line was built, sufficient clearance was left between it and the side of an ordinary box car so that a brakeman riding on the ladder at the side of such a car could pass; afterwards a wider model of car was put in use, whereby only eight inches of space was left between the side of the car and the platform. *Held,* that it was for the jury to determine whether the lack of space caused by the increased width of the car left a reasonably safe place for a brakeman to work.

3. ————: ————: ————. The question whether the employee had such knowledge of the defective appliance that he assumed the risk of injury from the same is, if properly pleaded, a question for the jury.

APPEAL from the district court for Douglas county: CHARLES LESLIE, JUDGE. *Affirmed.*

*Edson Rich, A. G. Ellick* and *B. W. Scandrett,* for appellant.

*Mahoney & Kennedy* and *Philip E. Horan, contra.*

LETTON, J.

On September 15, 1913, the plaintiff's intestate, Edward C. Henderson, was a .brakeman on a local freight train of defendant running from Columbus, Nebraska, to Council Bluffs, Iowa. At Elkhorn, Nebraska, it became necessary to place a coal car loaded with sand at a point west of the station in order to be unloaded. In so doing the engine, a Rock Island box car of ordinary width and Union Pacific coal car No. 11088 were backed by the engine in and upon a side track known as the house track. The yards for loading stock were situated contiguous to and on the south side of this track. The method used in switching was to back the engine quite rapidly, and, while running, a signal was given to the engineer, the engine was stopped, the coal car uncoupled and carried by its own momentum to the point where it was desired to place it. The operation is generally known as "kicking in." It is necessary for the coupling pin to be pulled while the cars were in motion. For this purpose Henderson, when last seen alive, was riding with his foot in a stirrup which projected below the ladder on the side of the coal car, holding to a round or handhold on the side of the car with his left hand, stooping over, and with his right hand upon the lever with which to raise the pin. He was riding on the engineer's side so as to give signals. As the train backed at a speed of about 12 miles an hour, the circumstances clearly indicate that he was struck by the projecting platform of the stock-yards and knocked from the car. His foot was cut off and he was dragged by the engine about 40 or 50 feet and killed. The distance from the outside edge of the rail to the edge of the platform was three feet. The distance from the edge of the rail to the

outside of the coal car upon which Henderson was riding was two feet four inches, leaving only eight inches between the platform and the side of the car. An ordinary box car is quite a little narrower, but the exact width is not in evidence. Henderson had been on this run between three and four months, but he had worked for the defendant on a train which ran twice a week, and which transported live stock between Grand Island and other Nebraska points and Council Bluffs, for some years previous to being placed upon the local freight. The wide coal cars had only been used by defendant for about four or five years before the accident, but now practically all the coal and sand hauled over the line is hauled in cars of this class.

The petition alleges negligence in the placing of the cattle chute so close to the track, that the car was of excessive width, and that the train was operated at a negligently high rate of speed. The answer denies that the death occurred in the manner alleged in the petition on account of any negligence or carelessness on the part of the defendant, and further alleges that the death of Henderson was "due to causes to which his own carelessness and negligence proximately contributed, and resulted from dangers and risks which were incident to his employment, and open, apparent, obvious and known to the said Edward C. Henderson at the time of said injuries, and which were assumed by him." The jury returned a verdict for $11,000, for which amount judgment was rendered.

The stock yards were erected at a time prior to the use of the wider coal cars. At the time the platform was erected it was probably reasonably safe and the company had fulfilled its whole duty, but by the subsequent use of the wider cars the distance between the car and the platform was lessened and the danger greatly increased. Accidents owing to the use of wider or higher cars than were usual when permanent structures near the track were built have occurred before. In one

case a brakeman riding upon a furniture car was missed from the train after passing a station where the iron spout to a water tank projected, and the circumstances showed that he had been struck by the overhanging spout, which would not clear a car higher than the average car by the height of a man above the roof of the car. *Choctaw, O. & G. R. Co. v. McDade,* 112 Fed. 888, affirmed 191 U. S. 64. Other cases are *Chesapeake & O. R. Co. v. Cowley,* 166 Fed. 283; *Keist v. Chicago G. W. R. Co.,* 110 Ia. 32; *Harvey v. Texas & P. R. Co.,* 166 Fed. 385, and cases cited in opinion.

In *Texas & P. R. Co. v. Swearingen,* 196 U. S. 51, the side of a scale box erected near the track was shown by the evidence to be only 9½ inches from a ladder on the side of a car moving upon the track. A brakeman was riding on a box car with his foot in the stirrup under the ladder and was looking backwards for a signal from the yardmaster, as it was his duty to do. His shoulder struck the scale box and he was knocked down and severely injured. He was riding on the north side of the car so as to signal the engineer. The evidence in that case was much the same as in this. It was shown that the customary position of a switchman while riding on a car ladder is to swing out from the car with his body, and that a well-developed man could not pass the scale box on the ladder. The plaintiff admitted that he knew of the nearness of the scale box, but said he was not thinking about it. It was contended in that case that the jury should have been instructed to find for the defendant for the reasons that the scale box was erected at a reasonably safe distance from the track, that the plaintiff knew of its location with reference to the track, that the danger was open and obvious and he assumed the risk therof. It was said in the opinion by Mr. Justice White: *"Prima facie,* the location of scales where the tracks were only the standard distance apart, and where a space of less than two feet was left for the movements of a switchman between the side of a freight

100 Neb.—47

car and the scale box, incumbered, as he would be in the nighttime, with a lantern employed for the purpose of signaling, did not incontestably establish the performance by the defendant company of the duty imposed upon it to use due care to provide a reasonably safe place for the use of the switchmen in its employ." It has also been said: "It is undoubtedly true that many duties required of employees in the transaction of the business to be carried on by a railroad company are necessarily attended with danger, and can only be prosecuted by means which are hazardous and dangerous to those who see fit to enter into such employment. Where no necessity exists, as in the present case, for the use of dangerous appliances, and where it is a matter requiring only due skill and care to make the appliances safe, there is no reason why an employee should be subjected to dangers wholly unnecessary to the proper operation of the business of the employer. *Kelleher v. Milwaukee & N. R. Co.*, 80 Wis. 584; *Georgia P. R. Co. v. Davis*, 92 Ala. 300; 1 Shearman & Redfield Negligence (5th ed.) sec. 201, and cases cited." *Choctaw, O. & G. R. Co. v. McDade*, 191 U. S. 64. See, also, *Kreigh v. Westinghouse, Church, Kerr & Co.*, 214 U. S. 249.

Defendant insists that the evidence shows that the deceased, from having been employed on the stock pickup and afterwards upon the local train, must have been sufficiently familiar with the situation of the platform so that he assumed the risk. We think there is not sufficient proof that Henderson knew of the dangerous condition, or that it was so patent and obvious that he would be charged with notice of it. This being the case, the question was for the jury, and was properly submitted by the instructions of the court. The defense of contributory negligence is not sustained by the evidence if Henderson was not aware of the dangerous proximity of the platform, as the jury must have found.

Complaint is made that the verdict is excessive. It is shown that for nearly two years Henderson had no regular

run, but was a member of what is known in railroad parlance as the "chain gang," i. e., train crews that are called in rotation. In June, 1913, he was assigned to a regular run upon the local freight train, and his wages were thus increased. After this change he received an average of about $107 a month. He was 38 years of age. His life expectancy was 29.62 years, and his wife's was greater. He used for his own expenses and clothing about $25 or $30 a month. He delivered to his wife the remainder of his salary each month for the support of his wife and child. The verdict of $11,000, under these circumstances, is not excessive.

The case seems to have been fairly submitted to the jury, and the judgment of the district court is

AFFIRMED.