JENNIE CASTLE v. UNION PACIFIC RAILROAD COMPANY.[1]

March 15, 1918.

No. 20,735.

**Federal Employer's Liability Act — death from negligence — evidence.**

1. In an action under the Federal Employer's Liability Act to recover for the alleged wrongful death of plaintiff's intestate, the evidence is *held* sufficient to sustain the charge of negligence made the basis of the action, and to establish with sufficient certainty the fact that the death complained of was caused thereby; the evidence takes that question beyond the field of conjecture and speculation.

**Same — reduction of verdict.**

2. The damages are *held* excessive and a reduction thereof is ordered as a condition to denying a new trial.

Action in the district court for Hennepin county by the administratrix

[1]Reported in 166 N. W. 767.

of the estate of Clarence E. Castle, deceased, to recover $25,000 for the death of her intestate. The answer alleged decedent's death resulted directly from risks of his employment which he had assumed as part thereof. The case was tried before Waite, J., who denied defendant's motion for a directed verdict, and a jury which returned a verdict for $20,000. Defendant's motion for judgment notwithstanding the verdict or for a new trial was denied. From the judgment entered pursuant to the order for judgment, defendant appealed. Affirmed, provided plaintiff consented to a reduction of the verdict to $16,000.

A. G. Ellick and Edward P. Sanborn, for appellant.

George C. Stiles and D. C. Edwards, for respondent.

BROWN, C. J.

Defendant owns and operates a line of railroad in and through several different states, is a common carrier and engaged in interstate commerce. Plaintiff's intestate, who was her husband, was in the employ of defendant in its interstate service in the capacity of switchman in the yards of the company at Council Bluffs, in the state of Iowa. While engaged in the discharge of his duties on August 25, 1916, he was run over and killed by a switch engine, around and in connection with which he was engaged in making up interstate trains. Plaintiff was subsequently duly commissioned administratrix of his estate and brought this action to recover the damages caused by his death to his next of kin. She had a verdict in the court below upon which, after a denial of defendant's motion for judgment or a new trial, judgment was duly rendered, from which defendant appealed.

The assignments of error present the general questions whether the evidence supports the verdict of negligence on the part of defendant, and whether the damages awarded by the jury are excessive.

The evidence, in respect to which there is no substantial dispute in the record, discloses the following facts: Decedent was a member of the night switching crew, and upon the occasion in question entered upon the discharge of his duties at about 8 o'clock in the evening, though switching operations were not commenced for about half an hour later; he was killed within 15 or 20 minutes after engaging in the particular work. The crew consisted of the engineer and fireman, in charge of the

engine, a foreman, decedent and another switchman. The engine had been prepared for the service by a roundhouse hostler and by him supplied with the necessary water and coal, and was supposed and understood to be in proper condition for use when turned over to the switching crew. The engine was equipped with the usual foot-boards extending across the front and rear ends thereof, upon which the switchman rode when moving about the yards in the switching operations, getting upon the same both when the engine was under movement and when it was stationary. One or two short switching movements had been made with the engine prior to the accident, and the third, which resulted in the death of decedent, occurred a little before 9 o'clock. At that time decedent and the foreman were standing by one of the yard tracks, the foreman on one side and decedent on the other side, awaiting the approach of the engine, which each intended to board in the usual manner, namely, by stepping upon the foot-board as the engine came up to them, and thereon riding to the end of that switching movement. The engine was running backward, pulling several cars to be switched upon a particular track there to become a part of an interstate train being then made up. The foreman stepped upon the foot-board in safety, but decedent in some way slipped and fell between the rails of the track and was run over and killed.

It is claimed by plaintiff, and herein is found the charge of negligence upon which she relies for recovery, that defendant had carelessly and negligently permitted a quantity of coal, in particles ranging from dust to pieces of the size of a walnut, to be and remain upon the particular foot-board, rendering the same dangerous and unsafe for use, in consequence of which decedent slipped when he stepped thereon and was thus caused to lose his balance and fall upon the track.

The allegations of the complaint in this respect were put in issue by the answer, but on the evidence presented the trial court and jury sustained plaintiff's view of the case, in doing which defendant contends that there was manifest error for the reasons: (1) That the evidence wholly fails to show how or in what manner the coal came upon the foot-board, or to charge defendant with responsibility therefor; (2) that no witness testified that the presence of the particles of coal made the foot-board dangerous to those required to use it and (3) that whether

decedent was injured in consequence of that condition of the foot-board is left by the evidence so conjectural and uncertain as not to justify a verdict against defendant.

We have given the record careful attention with the result that sufficient evidence is found therein to support the verdict as to each of these points. A brief reference thereto may be made.

1. The evidence makes it clear that the particles of coal were upon the foot-board at the time of the accident. The foreman of the crew and the other switchman both testified to that fact, and their information came from a personal inspection of the foot-board immediately after the accident. They found a "double handful" of the size stated spread over the board from which decedent had fallen. There was no direct testimony in explanation of its presence or as to how it came there. But we think the evidence fully justified the jury in finding that it came there at the time and as a result of coaling the engine a short time before it was turned over to the crew for the night's work. The head hostler testified to coaling the engine, and further that on completing the work he brushed off the foot-boards and removed all particles of coal that had scattered over the edge of the tender during the coaling operations. But the jury was not bound to accept his statement as expressing the fact, and was justified in concluding that he was mistaken. There had been no movement of the engine after it was turned over to the switchmen of a character to jar coal from the tender or to explain how it otherwise may have reached the foot-board, and it seems clear that it was thereon when the men received it from the hostler. The record presents no reason for discrediting the foreman and the other switchman who testified to the fact of its presence immediately after the accident.

2. While no witness was produced who gave evidence to the effect that the foot-board by reason of the particles of coal thereon was dangerous and unsafe for use, we think and so hold that the evidence, taken as a whole, made the question one of fact for the jury. In view of the general purpose of the foot-board, and the manner in which the switchmen in the regular discharge of their duties get upon the same when the engine is in motion, the danger to them from a deposit of loose coal thereon would seem too obvious to require specific proof to that effect. In fact the defendant recognized such danger and to avoid the same,

and in protection of the switchmen, imposed upon the hostler the duty of removing any quantity that might be scattered thereon in coaling the engine, before turning the engine over to them. The imposition of this duty upon the hostler is not disputed and, in the absence of a contrary showing, we are justified in assuming that the only purpose thereof was in furtherance of the obligation of the company to provide for the switchmen a safely equipped instrumentality for the discharge of their duties.

3. The third contention of defendant presents the only serious question upon this branch of the case, but we conclude that this also was made an issue of fact by the evidence, and that the verdict is sufficiently supported. It was not essential to plaintiff's case that direct evidence be presented to the effect that decedent slipped upon the particles of coal. The fact could as well be established by circumstantial evidence. Mitton v. Cargill Ele. Co. 124 Minn. 65, 144 N. W. 434; Hurley v. Illinois Cent. R. Co. 133 Minn. 101, 147 N. W. 1005. And though the rule in such cases is that the circumstantial evidence must tend to substantiate the claim that the accident in fact happened or was brought about by the alleged cause, as well as the fact that it could have happened therefrom (Rogers v. Minneapolis & St. L. Ry. Co. 99 Minn. 34, 108 N. W. 868), we find ample evidence to sustain the claim that the coal upon the footboard was the immediate and therefore the proximate cause of decedent's fall upon the track as he attempted to board the engine. In addition to the account given by the only eye-witness, the foreman of the switching crew, the position of the body after the accident furnishes most persuasive and confirmatory evidence in support of that view of the question. Decedent attempted to step upon the foot-board as the engine approached at the rate of about 4 miles an hour, and was discovered by the foreman, who had safely taken his position on the engine, in the act of falling to the ground, his feet extending to the side of the track opposite that from which he made the attempt, and his head and arm falling upon the rail over which he stepped in doing so. His position indicated clearly that his feet had slipped from under him, thus causing him to fall in the manner stated. If he had tripped over the rail, as suggested by counsel for defendant, he would necessarily have fallen forward, and his head would have been where his feet were when the accident was over. All this indicates beyond mere conjecture or speculation that the ac-

cident happened in the manner contended by plaintiff, and is sufficiently direct and certain within the rule in such cases. Mitton v. Cargill Ele. Co. and Hurley v. Illinois Cent. R. Co. supra; Choctaw, O. & G. R. Co. v. McDade, 112 Fed. 888, 50 C. C. A. 591; Philadelphia & R. Ry. Co. v. Marland, 239 Fed. 1, 152 C. C. A. 51. The contention that decedent assumed the risk is without substantial merit.

4. The rule of damages in an action of this kind is the same as that followed by the Federal courts in like cases, and permits a recovery of compensatory damages only, based upon the pecuniary loss of the next of kin. Nash v. Minneapolis & St. L. R. Co. 131 Minn. 166, 154 N. W. 957. In that case the next of kin consisted of the widow and 2 children, 3 and 5 years of age, respectively. In the case at bar the widow and 3 children remain as next of kin, the ages of the children being 4, 6 and 10 years. The earning capacity of decedent in that case was not substantially different from the earning capacity of decedent in this case. We there held that $18,000 was an excessive award of damages, and the verdict was ordered reduced to $12,000. The situation presented in each case is similar, and there are no substantial differentiating facts. The award in this case was $20,000. Within the rule applied in that case the amount is excessive and there must be a new trial or a reduction of the verdict.

It is therefore ordered that unless plaintiff, within 10 days after the cause is remanded to the court below, shall file a consent to a reduction of the verdict to the sum of $16,000, a new trial will be and is hereby granted. If the consent be so filed the judgment appealed from, as thereby modified, will be and is affirmed.

It is so ordered.